UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:24-cv-20626-WILLIAMS/GOODMAN

ELSA QUIÑONES,

        Plaintiff,

v.

MSC CRUISES, S.A.,

        Defendant.

_____/

## REPORT AND RECOMMENDATIONS ON MOTION TO DISMISS

In this maritime personal injury action, Defendant MSC Cruises, S.A. ("Defendant" or "MSC") filed a Motion to Dismiss Plaintiff Elsa Quiñones' ("Plaintiff" or "Quiñones") Complaint [ECF No. 1]. [ECF No. 9]. Plaintiff filed a response in opposition [ECF No. 11] and Defendant filed an optional reply [ECF No. 15]. The dismissal motion is, therefore, ripe. United States District Judge Kathleen M. Williams referred the motion to the Undersigned. [ECF No. 10].

For the reasons stated below, the Undersigned **respectfully recommends** that Judge Williams **deny** Defendant's motion to dismiss the 15-page Complaint. Plaintiff has sufficiently alleged, for pleadings purposes, that a MSC crew member was in the subject

area and was close enough to have seen the inadequate lighting. Whether Plaintiff will be able to later actually prove this allegation is a far-different question. Plaintiff will need to establish these critical allegations in a summary judgment setting (assuming that MSC or Plaintiff files such a motion on the notice issue) -- and she will not be able to rely on the procedural mechanism requiring the Court to accept as true her allegations. So, Plaintiff may well be kicking the can down the road, but, *for now*, her notice allegations are sufficient to clear the hurdle of plausibility.

**I.   Background**

Plaintiff filed suit against Defendant for damages related to physical injuries she allegedly sustained while she was a passenger aboard one of Defendant's ships, the *Seascape*. [ECF No. 1]. According to the Complaint, as Plaintiff "ascended the subject stairs which had steps that were very long, small, narrow, and had a metal strip, and lighting which was inadequate and/or too dim, she tripped and fell." *Id*. at ¶13.

The Complaint alleges that "poor lighting" was the "dangerous condition" in Counts I through III (for negligent failure to inspect, negligent failure to maintain, and negligent failure to remedy); in Counts IV and V (for negligent failure to warn of dangerous condition and negligent design, installation, and/or approval of the subject area and vicinity), the subject stairs was the "dangerous condition." *Id*. at ¶14.

According to the Complaint, Quiñones suffered severe injuries that include, but are not limited to, "loss of consciousness, a traumatic brain injury, a fracture to her head, a sinus fracture, memory loss, forgetfulness, blurry vision, and other injuries." *Id*. at ¶15.

Defendant filed the motion to dismiss because it says the Complaint "failed to plausibly plead that MSC Cruises S.A., had actual or constructive notice of an alleged risk[-]creating condition on November 30, 2023" and "failed to identify with specify [sic] the exact hazardous condition, much less its location aboard the 1,112 foot, 20[-]deck, *MSC Seascape*."[ECF No. 9, p. 1]. Moreover, MSC contends that the Complaint is "premised solely on 'fact-free, wholly conclusory, boilerplate allegations' that Defendant knew or should have known about the purportedly dangerous condition." *Id*.

Paragraph 16 of the Complaint [ECF No. 1] contains more-specific allegations about MSC's purported knowledge (*i.e*., knew or should have known) of the alleged dangerousness of the subject area:

> a. There was a male MSC crewmember in the subject area within viewing distance of the exact location of QUIÑONES' fall who was in the subject area prior to when QUIÑONES' walked there. This crewmember was within viewing distance and close enough to have seen that the subject lighting was inadequate because he was looking right in the direction of the subject area but who failed to adjust the lighting or to assist passengers in using the stairs while the lighting could be fixed.
>
> b. There are relevant safety standards/recommendations/other guidelines regarding the safety of the subject area, including, but not limited to, prohibitions and/or recommendations against dangers such as the dangerous condition encountered by QUIÑONES. MSC should have known of these standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally

3

required for MSC to comply with or not, a fact finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable cruise line should have done.

c.      MSC also knew or should have known of this risk-creating and/or dangerous condition through inspecting the subject area involved in QUIÑONES' incident, and if it did not know of this risk-creating and/or dangerous condition, this was because MSC failed to adequately inspect the subject area prior to QUIÑONES' incident.

d.      Moreover, MSC knew or should have known of this risk-creating and/or dangerous condition for other reasons that will be revealed through discovery, including previous passengers that suffered prior incidents involving substantially similar dangers on the subject ship and other ships in MSC's fleet.

The Complaint contains other allegations of negligence:

21.     At all times relevant, MSC failed to adequately inspect the subject area and the vicinity for dangers, and MSC failed to adequately warn QUIÑONES of the dangers.

22.     At all times relevant, MSC failed to maintain the subject area and the vicinity in a reasonably safe condition. For example, MSC failed to perform regular upkeep on the subject area, including, but not limited to, failing to make sure the lights at the time of QUIÑONES' incident were on and/or not unreasonably dim.

23.     At all times relevant, MSC had the ability to cure the deficiencies and to eliminate the hazards, but failed to do so. For example, MSC could have turned up the lights or blocked off the subject stairs before the incident, but failed to do so.

24.     These conditions were neither open nor obvious to QUIÑONES, as QUIÑONES was unable to see the subject steps due to the inadequate lighting in the area.

*Id*. at ¶¶ 21-24.

In challenging the sufficiency of the allegations, MSC poses the following question:

4

> If Plaintiff[,] who physically walked on the subject staircase that posed an alleged "risk creating condition," did not see the alleged "risk creating condition" as she approached the "risk creating condition" and subsequently stepped on the "risk creating condition," then how was an alleged MSC crewmember purportedly stationed within (an unspecified) 'viewing distance" from the "risk creating condition," supposed to have seen the alleged "risk creating condition?

[ECF No. 9, p. 9].

MSC's dismissal motion also challenges Plaintiff's "other crew member nearby" allegation, emphasizing that Plaintiff did not identify the rank, position, department or name of the alleged MSC crew member. Defendant also contends that the Complaint does not "plausibly allege that the alleged crewmember was aware of the alleged 'risk creating condition'; that the crew member should have aware of the alleged 'risk creating condition'; or how the alleged crew member could have been aware of the alleged 'risk creating condition.'" *Id.* at 10.

In addition, MSC's dismissal motion further contends that Plaintiff has not adequately alleged a substantially similar incident capable of imputing notice to MSC. Although the Complaint alleges that there are "passengers that suffered prior incidents involving substantially similar dangers on the subject ship and other ships in MSC's fleet, MSC argues that Plaintiff makes no attempt to factually correlate the trip and fall here with any of the other so-called prior incidents which could give MSC notice.

MSC highlights that the Complaint fails to allege that "the hazardous condition existed for a sufficient length of time to put MSC on notice of it." *Id.* at 11. Thus, MSC

5

says, the Complaint makes it "impossible for the Court to tell if the hazardous condition the Plaintiff complains of was present for five second[sic], five minutes, or five hours." *Id*.

MSC also takes issue with Plaintiff's reference to "industry standards," to impute notice, arguing that these standards cannot be used to impute notice.

Plaintiff, of course, opposes the motion, and she filed a response. [ECF No. 11]. At bottom, Plaintiff argues that she *has* alleged "highly detailed accounts of how she will prove notice." *Id*. at 2. Her primary account is the allegation that an unnamed crewmember was "**close enough to have seen** that the subject lighting was inadequate because **he was looking right in the direction of the subject area but who failed to adjust the lighting** or to assist passengers in using the stairs while the lighting could be fixed." *Id*. (quoting ECF No. 1, at ¶16(a) (bold font emphasis by Plaintiff in her response memorandum)).

Plaintiff also responded to the point that she did not specifically name the crewmember, noting that there is no legal requirement for her to do so.

In her response, Plaintiff *disclaims* any effort to pursue a vicarious liability theory of negligence, meaning the Complaint asserts only a direct liability theory, which, in turn, means that she must adequately allege actual or constructive notice of the dangerous condition.

Plaintiff's response did not develop the other allegations she succinctly alleged in her Complaint, such as unspecified industry standards, failure to inspect and the fact-

6

free, specifics-omitted theory that "previous passengers [ ] suffered prior incidents involving substantially similar dangers on the subject ship and other ships in MSC's fleet." [ECF No. 1, ¶ 16(d)]. Given this procedural scenario, Plaintiff has abandoned those arguments. "[A] claim may be considered abandoned when the allegation is included in the plaintiff's complaint, but [the plaintiff] fails to present any argument concerning this claim to the district court." *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (citation omitted); *see also Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("when a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned") (citation omitted). "Courts in this district regularly deem claims abandoned where a plaintiff raises the claim in a complaint, but then fails to defend it in opposition to a motion to dismiss." *Gomez v. Miami-Dade Cnty.*, 563 F. Supp. 3d 1211, 1218 (S.D. Fla. 2021); *see, e.g., Fontainebleau Fla. Hotel, LLC v. S. Fla. Hotel & Culinary Emps. Welfare Fund*, 508 F. Supp. 3d 1239, 1246 (S.D. Fla. 2020); *GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1311 n.7 (S.D. Fla. 2017); *Haasbroek v. Princess Cruise Lines, Ltd.*, 286 F. Supp. 3d 1352, 1358 n.4 (S.D. Fla. 2017); *Checker Cab Operators, Inc. v. Miami-Dade Cty.*, 899 F.3d 908 (11th Cir. 2018).

**II.     Legal Standards and Analysis**

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts as true. *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). To state a claim for relief, a pleading must contain: "(1) a short plain statement of the grounds for the court's jurisdiction[;] . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought[.]" Fed. R. Civ. P. 8(a). Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Personal-injury claims by cruise ship passengers, complaining of injuries suffered at sea, are within the admiralty jurisdiction of the district courts." *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1365 (11th Cir. 2018) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587–88, 111 S. Ct. 1522, 1524 (1991)). "Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara v. NCL (Bah.) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (citing *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320–21 (11th Cir. 1989)).

"In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Van Deventer v. NCL Corp. Ltd.*, No. 23-CV-23584, 2024 WL 836796, at *4 (S.D. Fla. Feb. 28, 2024) (quoting *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012)). "To

8

prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" *Guevara*, 920 F.3d at 720 (quoting *Chaparro*, 693 F.3d at 1336).

The duty of care owed by the owner of a ship in navigable waters, while its passengers are on board the vessel, is a duty of exercising reasonable care under the circumstances. *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 632 (1959); *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990). Additionally, under general maritime law, "a cruise line owes its passengers a duty to warn of known dangers beyond the point of debarkation in places where passengers are invited or reasonably expected to visit." *Chaparro*, 693 F.3d at 1336; *Carlisle v. Ulysses Line Ltd., S.A.*, 475 So. 2d 248, 251 (Fla. 3d DCA 1985); *Carmouche v. Carnival Corp.*, No. 13-62584-CV, 2014 WL 12580521, at *5 (S.D. Fla. May 15, 2014); *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1340 (S.D. Fla. 2016).

In order to impose direct liability against a cruise ship for personal injuries sustained while aboard the ship, as a prerequisite to imposing liability, the carrier must have actual or constructive notice of the risk-creating condition." *See Thompson*, 174 F. Supp. 3d at 1340 (quoting *Keefe*, 867 F.2d at 1322). *See generally Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1167 (11th Cir. 2021) ("[P]assenger cannot succeed on a maritime

9

negligence claim against a shipowner unless that shipowner had actual or constructive notice of a risk-creating condition.").

But a cruise passenger plaintiff need not establish actual or constructive notice by the cruise ship operator of a risk-creating condition when the claim is based on *vicarious liability* (*i.e.,* negligence by specific cruise ship crew members, employees or other agents, acting within the scope of their employment). *Yusko,* 4 F.4th at 1169-1170. But, as noted, Plaintiff is no longer pursuing a vicarious liability theory.

Actual notice exists when the defendant knows about the dangerous condition. *See Holland*, 50 F.4th at 1095 (citing *Keefe*, 867 F.2d at 1322; *Guevara,* 920 F.3d at 720). Constructive notice exists where "the shipowner ought to have known of the peril to its passengers, the hazard having been present for a period of time so lengthy as to invite corrective measures." *Id.* (citing *Keefe*, 867 F.2d at 1322). A plaintiff can establish constructive notice by alleging "that the 'defective condition exist[ed] for a sufficient period of time to invite corrective measures.'" *Id*. (citing *Guevara,* 920 F.3d at 720 (alteration in original) (quoting *Monteleone v. Bahama Cruise Line, Inc.,* 838 F.2d 63, 65 (2d Cir. 1988))). A plaintiff can also establish constructive notice by alleging "substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Id.* (quoting *Jones v. Otis Elevator Co.,* 861 F.2d 655, 661–62 (11th Cir. 1988)).

### *Sufficient Notice for Direct Liability*

MSC contends that the Complaint does not allege sufficient facts demonstrating that it was on notice of the risk-creating condition. MSC relies heavily on *Holland*, where an appellate court panel noted that most of the plaintiff's factual allegations to prove notice were conclusory and "[s]imply put, [plaintiff's] allegations [did] not cross the line from possibility to plausibility of entitlement to relief." 50 F.4th at 1096. As such, if the risk-creating condition existed for a sufficient period of time or where substantially similar prior incidents are adequately alleged, then constructive notice may be established; however, mere speculation and recitation of legal conclusions without accompanying factual support fail to meet the federal pleading standard. *Id.* at 1096-97.

MSC also relies heavily on *Newbauer v. Carnival Corp.*, 26 F.4th 931, 936 (11th Cir. 2022), where the court affirmed an order dismissing a complaint without first giving the plaintiff an opportunity to amend. In *Newbauer*, the plaintiff asserted claims for negligent failure to maintain and negligent failure to warn. Those claims arose from allegations that the plaintiff slipped on a liquid, or a wet, slippery transitory substance which was located in a high traffic dining area which "had existed for a sufficient period of time before [her] fall" such that Carnival had actual or constructive knowledge of its presence and the opportunity to correct or warn about the hazard. *Id*. at 936. The plaintiff also alleged that Carnival had actual or constructive knowledge of the substance because of "the regularly and frequently recurring nature of the hazard in that area." *Id*.

11

The *Newbauer* Court held that the plaintiff failed to include any factual allegations sufficient enough to satisfy the *Iqbal* and *Twombly* pleading standards such that it was not facially plausible (based on the complaint) that Carnival had actual or constructive notice of the dangerous condition. *Id.* at 935. The *Newbauer* Court explained that the plaintiff did not provide any factual allegations supporting the notion that the area's high traffic gave Carnival the requisite notice. This same omission doomed the plaintiff's allegations that the wet or slippery substance had existed for a long enough time for Carnival to have had notice, that the hazard was regularly and frequently recurring, and that there may have been employees in the area who observed the hazard but failed to take corrective action.

Here, Plaintiff alleges that MSC was on notice because an unnamed male crew member was close enough to the low-lit area to be in viewing distance and, significantly, close enough to have seen that the lighting was inadequate, and, also significantly, was looking right in the direction of the subject area (but did nothing to help).

For all practical purposes, MSC challenges Plaintiff's allegations about the crew members proximity to the low-light stair area on the facts. In other words, it implicitly argues that the allegations are simply false. For example, it refers to the critical allegation as a crewmember who was "conveniently positioned." [ECF No. 9, p. 9]. Combined with Defendant's emphasis on Plaintiff's failure to allege the name, rank, position, and department of the crewmember, this approach not-too-subtly suggests that the allegations cannot be believed.

12

Moreover, MSC notes that the Complaint did not plausibly identify (1) the distance the alleged crewmember was from the alleged risk creating condition, (2) what the crew member was doing at the time of the alleged incident, (3) how the crew member could have observed the alleged risk creating condition, or (4) how the crew member could have warned Plaintiff who physically walked on the subject staircase that posed an alleged "risk creating condition," and did not see the alleged "risk creating condition" as she approached the "risk creating condition" and subsequently stepped on the "risk creating condition." [ECF No. 15, p. 6].

Thus, MSC argues that the primary notice theory (which focuses almost solely on the alleged nearby crewmember) is insufficient to nudge the claim from conceivable to plausible.

But the Undersigned's task now is *not* to determine if the allegations are actually true or false. It is, of course, relatively easy to *allege* that a crewmember was nearby and was looking at the location of the trip and fall. But the mere fact that the allegation is not difficult to assert does not mean that we can ignore it. Therefore, the Undersigned's assignment is to see whether the allegations are more than insufficient legal conclusions and threadbare recitals of the cause of action.

As Plaintiff pointed out in her response, the Eleventh Circuit, in a case with the exact same fact pattern, held that there was sufficient evidence of notice on a motion for summary judgment. [ECF No. 11, p. 3 (citing *Aponte v. Royal Caribbean Cruise Lines Ltd.*,

13

739 F. App'x 531, 537 (11th Cir. 2018) ("In some cases the proprietor may be held to have constructive knowledge if the plaintiff shows that **an employee** of the proprietor was **in the immediate area** of the dangerous condition and **could have easily seen the substance and removed the hazard**.") (emphasis added))].

Defendant attempts to rely on *Holland*, but the Eleventh Circuit in Holland made it clear that regardless of the lower court's interpretation, allegations such as the those stated above do in fact plausibly state notice; and it suggested that it would have found the pleadings adequate had allegations such as those above been pled. *See Holland*, 50 F.4th at 1096 (11th Cir. 2022) ("Furthermore, while Holland alleges that there were crewmembers in the surrounding shops, **he does not allege that there were any crewmembers in the immediate area** of the glass staircase that could have observed or warned him of the hazard. Simply put, Holland's allegations do not cross the line from possibility to plausibility of entitlement to relief.") (emphasis added).

While there may have been crewmembers with an unobstructed view of the stairs in *Holland*, this is not the same as alleging that they were actually close enough to have *actually* seen the danger. However, here, unlike in *Holland,* Plaintiff alleged that there was a crewmember who was close enough to the subject area to have seen the danger. For now, this is adequate to allege constructive notice. *See Davis v. Carnival Corp.*, No. 22-CV-24109-WILLIAMS/REID, 2023 WL 5955700 (S.D. Fla. July 31, 2023) (no requirement to name crewmember in Complaint and noting "it would seem fundamentally unfair to

14

require the Plaintiff to remember the names of each of the crewmembers involved in the incident simply to file a complaint"), at *4-5. *Cf. Feagin v. Carnival Corp.*, No. 23-cv-234601 S.D. Fla., Nov. 29, 2023, ECF No. 22, p. 2 (pointing out that three counts were overlapping and duplicative, but noting that, notwithstanding this structural defect, "the allegations in the Amended Complaint appear to have sufficiently stated a claim for direct negligence").[1]

### III. Conclusion

For the above-mentioned reasons, the Undersigned **respectfully recommends** that the District Court **deny** Defendant's Motion to Dismiss. MSC can certainly attack the allegations in a summary judgment motion if discovery does not yield substantial enough evidence of constructive notice.

### IV. Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the

---

[1] Plaintiff attached the hearing transcript to her response. [ECF No. 11-1]. On page 15 of the transcript, Plaintiff's counsel distinguished *Holland* by noting that Feagin's Complaint was adequate because it alleged that the crewmembers were in viewing distance -- and the Court held that this view was "correct" because, at the motion to dismiss stage, "we don't have to get that level of specificity".

15

parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, July 2, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Kathleen M. Williams
All Counsel of Record